UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>　　　　　　　　　Plaintiff,<br><br>　　v.<br><br>ERICK URBINA-ESCOTO<br><br>　　　　　　　　　Defendant. | CASE NO. CR20-131RSM<br><br>ORDER DENYING DEFENDANT'S MOTION TO DISMISS INDICTMENT |

## I.　　INTRODUCTION

This matter comes before the Court on Defendant Erick Urbina-Escoto's Motion to Dismiss Indictment. Dkt. #32. Plaintiff United States of America ("the Government") opposes Defendant's motion. Dkt. #35. The Court finds oral argument unnecessary to rule on this motion. LCrR 12(b)(12). Having reviewed Defendant's Motion, the Government's Response, and the remainder of the record, the Court DENIES Defendant's motion.

## II.　　BACKGROUND

Defendant, a Honduran national, was indicted on August 20, 2020 for one count of possession of heroin with intent to distribute, 21 U.S.C. §§ 841(a)(1), 841(b)(1)(B). Dkt. #9. A detention and arraignment hearing was held before the Honorable Michelle L. Peterson, United States Magistrate Judge, on September 2 and 4, 2020, and Defendant was released on appearance

ORDER DENYING DEFENDANT'S MOTION
TO DISMISS INDICTMENT - 1

bond. Dkts. #29, #30. Due to a previously lodged immigration detainer, Immigration and Customs Enforcement ("ICE") removed Defendant from the Federal Detention Center on September 10, 2020 and detained him at the Northwest Detention Center ("NWDC"). Dkt. #32 at 2. The Government requested that ICE release Defendant pending resolution of the criminal prosecution, which ICE denied.

On October 5, 2020, Defendant moved to dismiss the indictment on the basis that under the Bail Reform Act ("BRA"), 18 U.S.C. § 3142, the Executive Branch must decide between pursuing a criminal prosecution or immigration proceedings and cannot pursue both at the same time. Dkt. #32 at 3. Defendant argues that ICE's refusal to lift its detainer "signifies a decision by the executive branch to prioritize deportation over prosecution" and thus requires dismissal of his indictment with prejudice. *Id.* at 8.

### III. DISCUSSION

**A. Legal Standard**

"A district court may dismiss an indictment on the ground of outrageous government conduct if the conduct amounts to a due process violation." *United States v. Barrera-Moreno*, 951 F.2d 1089, 1091 (9th Cir. 1991). "If the conduct does not rise to the level of a due process violation, the court may nonetheless dismiss under its supervisory powers." *Id.* There are three grounds on which a court may exercise its supervisory powers: "to remedy a constitutional or statutory violation; to protect judicial integrity by ensuring that a conviction rests on appropriate considerations validly before a jury; or to deter future illegal conduct." *Id.* (citing *United States v. Hasting*, 461 U.S. 499 (1983)).; *see also United States v. W.R. Grace*, 526 F.3d 499, 511 n.9 (9th Cir. 2008) (noting that a district court's supervisory powers are not limited to these three grounds).

Here, Defendant argues that his detention at the NWDC violates his right to pre-trial release under the BRA. Dkt. #32 at 7.

**B. The Bail Reform Act and the Immigration and Nationality Act**

Congress enacted the BRA to "give the courts adequate authority to make release decisions that give appropriate recognition to the danger a person may pose to others if released . . . ." *United States v. Salerno*, 481 U.S. 739, 741 (1987). After a hearing, if a judicial officer finds that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community, such judicial officer shall order the detention of the person before trial." 18 U.S.C. § 3142(e)(1). Judge Peterson found that the Government failed to meet its burden of establishing that Defendant was a flight risk or a danger to the community, and thus ordered Defendant released on an appearance bond. Dkt. #30; *see* 18 U.S.C. §§ 3142(a)(1), 3142(b).

The Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101, *et seq.*, charges the U.S. Secretary of Homeland Security with the administration and enforcement of the INA and other immigration laws. Under the INA, ICE is authorized or, in certain cases, required, to detain individuals who are subject to removal. *See* 8 U.S.C. §§ 1226(a)(1) (authorizing discretionary detention pending removal); 1226(c) (requiring mandatory detention based on prior criminal convictions); 1231(a)(2) (requiring mandatory detention based on final order of removal). It is not clear from parties' briefing whether Defendant is detained under the INA's mandatory or discretionary detention provisions. Pursuant to the lodged ICE detainer, ICE was notified of Defendant's pre-trial release from the Federal Detention Center so that it could arrange to assume custody. *See* 8 C.F.R. § 287.7(a) ("A detainer serves to advise another law enforcement agency

that the Department seeks custody of an alien presently in the custody of that agency, for the purpose of arresting and removing the alien.").

**C. Analysis**

Defendant argues that Judge Peterson's order for pre-trial release under the BRA precludes ICE from detaining Defendant pending his removal proceedings. Dkt. #32 at 2-7. While courts have reached different conclusions on whether the BRA's release provisions preclude ICE from detaining a defendant under the INA,[1] a court within this district has considered the issue and found that "no such preclusion exists." *See United States v. Rincon-Meza*, No. CR19-0062-JCC, 2019 WL 2208734, at *3 (W.D. Wash. May 22, 2019). In considering the purpose of the BRA, the *Rincon-Meza* court determined that pre-trial detention of a criminal defendant and detention of an alien pending removal proceedings "are separate functions, administered by separate authorities, and serve different purposes. Thus, it is not apparent that the BRA and INA conflict such that one nullifies the effect of the other." *Id.* The court further concluded that the text of the BRA, and subsection 3142(d) in particular, "does not evidence Congress's specific intent that the BRA would broadly displace the INA as to a given defendant subject to both criminal prosecution and removal proceedings." *Id.* This Court finds no basis here to diverge from *Rincon-Meza*.

---

[1] Defendant relies on two district court decisions within the Ninth Circuit to support his argument that pre-trial release precludes pre-removal detention. *See United States v. Trujillo-Alvarez*, 900 F. Supp. 2d 1167 (Dist. Or., Oct. 29, 2012); *United States v. Rangel*, 318 F. Supp. 3d 1212 (E.D. Wash, March 21, 2018). The Government cites to several circuit court decisions outside the Ninth Circuit that reached the opposite conclusion. *See United States v. Lett*, 944 F.3d 467, 471 (2d Cir. 2019) ("The BRA and the INA authorize the government to pursue both criminal prosecution and removal simultaneously, and there is no conflict between the detention-and-release provisions of the two statutes."); *United States v. Soriano Nunez*, 928 F.3d 240, 245 (3d Cir. 2019) (Pre-trial release does not preclude pre-removal detention, and the BRA and INA do not conflict); *United States v. Veloz-Alonso*, 910 F.3d 266, 270 (6th Cir. 2018) ("ICE may fulfill its statutory duties under the INA to detain an illegal alien pending trial or sentencing regardless of a BRA release determination."); *see also United States v. Pacheco-Poo*, 952 F.3d 950, 953 (8th Cir. 2020); *United States v. Vasquez-Benitez*, 919 F.3d 546, 553 (D.C. Cir. 2019).

Accordingly, it concludes that ICE's detention following Judge Peterson's pre-trial release order does not violate Defendant's rights under the BRA.

Defendant also appears to argue that ICE's detention contravenes 8 C.F.R. §§ 215.2(a), 215.3, which provides that "[n]o alien shall depart … from the United States if his departure would be prejudicial to the interests of the United States under the provisions of § 215.3." *See* Dkt. #32 at 5, n.1. Section 215.3, in turn, identifies "alien[s] whose departure is deemed prejudicial to the interests of the United States," which includes "any alien who is needed in the United States . . . as a party to[] any criminal case under investigation or pending in a court in the United States[.]" 8 C.F.R. § 215.3(g).

Defendant has failed to demonstrate that these regulations apply here. Courts have recognized that Sections 215.2 and 215.3(g) refer to individuals voluntarily departing from the United States—not those subject to removal proceedings. *United States v. Marinez-Patino*, No. 11 CR 064, 2011 WL 902466, at *6 (N.D. Ill. Mar. 14, 2011) ("[T]he legislative authority for Section 215 is contained in 8 U.S.C. § 1185(a). This statute . . . provides for regulations governing an alien's ability to 'depart from' or 'enter' the United States, not the government's ability to 'remove' an alien (a topic which is separately addressed in 8 U.S.C. § 1231)." Because parties have not indicated that Defendant is subject to voluntary departure, Section 215 is inapposite. *See Rincon-Meza*, 2019 WL 2208734, at *2, n.2 (Finding 8 C.F.R. § 215.2 and § 215.3(g) inapplicable where "[d]efendant is presently subject to removal proceedings and the parties have not indicated that he has been offered the option of voluntary departure.").

Defendant has provided no other reasons for why the Government's conduct merits dismissal of the indictment. Accordingly, the Court finds that denial of Defendant's motion is appropriate.

## IV. CONCLUSION

For the reasons set forth above, the court ORDERS that Defendant Urbina-Escoto's Motion to Dismiss Indictment, Dkt. #32, is DENIED. The Clerk is directed to send a copy of this Order to all counsel of record.

IT IS SO ORDERED.

Dated this 20th day of October, 2020.

RICARDO S. MARTINEZ
CHIEF UNITED STATES DISTRICT JUDGE